———

BEADLE, (ARMSTRONG v.)    See Case No. 541.

———

## Case No. 1,156.

### In re BEAL.

[1 Lowell. 323;[1] 2 N. B. R. 587, (Quarto, 178;) 2 Amer. Law T. Rep. Bankr. 95; 1 Chi. Leg. News, 326.]

District Court, D. Massachusetts. May, 1869.

BANKRUPTCY—CONCEALED ASSETS — TITLE IN ANOTHER—JOINT ESTATE—SEPARATE ASSIGNEES.

1. If a bankrupt has property in his possession, and has the use of it as his own, and wil-

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

fully omits it from his schedules and keeps it from his assignee, it is no answer to a charge of concealment thereof that the property belonged of right to his assignees under an earlier assignment in insolvency, under the laws of the state of his residence.

[Cited in Shimer v. Huber, Case No. 12,787; Re Moses, 1 Fed. 847.]

2. If a bankrupt has the actual possession of joint estate and joint books of account, he must disclose them to his separate assignees, and if he wilfully fails to do so, is not entitled to a discharge.

[Cited in Re Leland, Case No. 8,228.]

[In bankruptcy. Heard on objections to the discharge of the bankrupt. Discharge refused.]

It appeared that in 1866 the bankrupt carried on business in Boston, in partnership with one Ricker; and in the autumn of that year he bought for the firm a large quantity of goods on credit, and disposed of them in various ways, which his creditors thought to be fraudulent, under the insolvent laws of Massachusetts; and upon their petition the firm was adjudged insolvent. Their books were never found by the assignees, and the goods were never accounted for, and no discharge was ever granted them. Ricker was then and since a resident of New York, and the business here was conducted chiefly by [J. H.] Beal. The judge said that although the law of this state, in most respects, so far as such acts as then alleged against the firm of Beal & Ricker were concerned, was substantially similar to the bankrupt law, yet none of those acts could be set up in bar of his discharge here, because they were all done before the bankrupt law was passed.

J. D. Ball, for the creditors. If we trace goods and books of account into the bankrupt's possession in 1866, and show that he did not in fact hand them over to his assignees in insolvency, or otherwise account for them, the presumption is that he still has them, and as he has made no return of any such property or books in his schedules, nor delivered them to his assignees in bankruptcy, he must now account for them, or be deemed guilty of concealment, and fail to obtain his certificate of discharge.

[BY THE COURT: This view was adopted for the purposes of the hearing, and all legal evidence that either party offered on these matters was heard subject to the ultimate decision of the questions of law as well as of fact upon full argument, which has now been had.][2]

E. Avery, for the bankrupt, contended that whatever estate he possessed or was entitled to, and whether concealed or not, passed to his firm's assignees in insolvency, and that they had full power to inquire into all his dealings, and to set aside fraudulent conveyances, and must be conclusively presumed to have done their duty, or whether they did or not, that nothing was left for

---

[2] [From 2 N. B. R. 587, (Quarto, 178.)]

the assignees in bankruptcy.. and therefore nothing can have been wilfully concealed from them.

[BY THE COURT: I cannot yield my assent to this argument.] [3]

LOWELL, District Judge. The question is one of fact, whether this bankrupt had, at the time of his bankruptcy, any estate or effects, or any books relating thereto, which he has concealed. If he had such de facto, though by a defeasible title, he must set them out in his schedules, and give them to his assignees. It is not for him to rely on the title of a third person, which he has not himself respected. The presumption is that he surrendered all his property in 1866; but that is a presumption of fact, and if he did not, it is not important whether his motives were good or bad, whether his acts were done with the consent or against the will, and in fraud of the rights, of his then assignees. The possession of assets in the use and enjoyment of the bankrupt makes a sufficient title for his assignees in bankruptcy until the earlier assignees shall dispute it. A like argument applies to the books of account, though with somewhat greater force, because they are not so much assets as means of evidence, and might well be left in the bankrupt's possession after they had been inspected and made use of by the former assignees.

Again, it is said that the books and the property, if any there were, belonged to the firm of Beal & Ricker, and the firm is not in bankruptcy. But if this bankrupt had in his possession any of the joint estate, it would pass to his assignee, who would hold as tenant in common with the solvent partner. Whether the latter could take possession and control of it, subject to account, would depend on circumstances. Speaking generally, he could not; and, in any event, it must be disclosed in the bankrupt's schedules.

Finally, it was argued that these assignees, who happen to be the very same persons who were the assignees in insolvency, knew all that they now know long before the bankruptcy, and therefore there has been no concealment from them. As I state this argument, I fear that I must have misunderstood it; if not, it is easily answered. A concealment of property and books from a person entitled to their possession is not the less a concealment of them because he knows they are concealed, if he does not know where they are concealed. The facts in the case show a studied and protracted evasion on the part of the bankrupt of all information on the subject of his property and books. He seems to be very hostile in his feelings toward the assignees, and this may possibly account for his mode of meet-

ing the necessary and proper inquiries which were made of him in his examination before the register; but the natural inference is that he was seeking to conceal the truth. He undertook, towards the close of the hearing, to account for his trade property by the payment of large debts by way of preference; but the explanation seemed to come very late. I do not feel by any means sure that he has any estate, but upon the evidence I can hardly say that he has not. There is every reason to suppose that he has the books of account of Beal & Ricker, unless he has destroyed them; and on the ground that he has concealed them from his assignees I refuse his discharge.

Discharge refused. ·